**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**LISA WACHOWICZ**, on behalf of herself and all others similarly situated,

*Plaintiff*,

v.

**DOVENMUEHLE MORTGAGE, INC.**,

*Defendant*.

Case No. 1:23-cv-08834

Hon. Rebecca R. Pallmeyer
United States District Judge

Hon. Albert Berry, III
United States Magistrate Judge

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

James A. Francis*
John Soumilas*
Lauren KW Brennan*
FRANCIS MAILMAN SOUMILAS, P.C.
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: 215.735.8600
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
lbrennan@consumerlawfirm.com

Jordan M. Sartell
FRANCIS MAILMAN SOUMILAS, P.C.
310 South County Farm Road, Suite H
Wheaton, IL 60187
T: 215.735.8600
jsartell@consumerlawfirm.com

*Attorneys for Plaintiff Lisa Wachowicz and the Proposed Class*

*admitted *pro hac vice*

# TABLE OF CONTENTS


**Page**

TABLE OF AUTHORITIES ..... ii

I. INTRODUCTION ..... 1

II. FACTS ..... 1

A. DMI Does Not Mark Disputed Accounts as Disputed in Its ACDV Responses Pursuant to Its Standardized and Intentionally Adopted Practices ..... 1

B. DMI Did Not Mark Plaintiff's Account as Disputed in Response to Her Multiple ACDV Disputes ..... 4

C. DMI's Failure to Correct Its Reporting and Mark The Account as "Disputed" Harmed Plaintiff ..... 5

III. LEGAL STANDARD ..... 6

IV. ARGUMENT ..... 7

A. DMI Fails to Meet Its Burden to Demonstrate That Its ACDV Responses Were Complete and Accurate in Light of Binding Circuit Court Precedent Requiring Furnishers to Acknowledge the Disputed Status of Accounts in the Context of ACDV Disputes ..... 7

1. DMI Ignores More Than a Decade of Binding Circuit Court Authority Concerning Its FCRA Section 1681s-2(b) Obligation to Report Disputed Accounts as Disputed ..... 7

2. DMI's Attempt to Shelter Behind Non-Binding Industry Guidance Is Unavailing ..... 10

B. Disputed Issues of Material Fact Preclude Summary Judgment as to Whether DMI's Reinvestigations of Plaintiff's Disputes Were Reasonable as a Matter of Law ..... 13

C. Disputed Issues of Fact Regarding Plaintiff's Injuries Preclude Summary Judgment ..... 14

D. DMI Cannot Claim Safe Harbor Under *Safeco*, and a Reasonable Jury Could Find that It Recklessly Disregard Its FCRA Duties ..... 18

V. CONCLUSION ..... 20

# TABLE OF AUTHORITIES

## CASES

**Page(s)**

*Adams v. Bd. of Educ. of Harvey Sch. Dist. 152*,
968 F.3d 713 (7th Cir. 2020) ....................15

*Alexander v. Moore & Assocs., Inc.*,
553 F. Supp. 948 (D. Haw. 1982) ....................16

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ....................17

*Chaitoff v. Experian Info. Sol's, Inc.*,
79 F.4th 800 (7th Cir. 2023) ....................9, 10

*Chiang v. Verizon New England Inc.*,
595 F.3d 26 (1st Cir. 2010) ....................10

*Cortez v. TransUnion Corp.*,
617 F.3d 688 (3d Cir. 2010) ....................15

*Crabill v. Trans Union, L.L.C.*,
259 F.3d 662 (7th Cir. 2001) ....................15

*Craftwood II, Inc. v. Generac Power Sys., Inc.*,
920 F.3d 479 (7th Cir. 2019) ....................15

*Dalton v. Capital Assoc.*,
257 F.3d 409 (4th Cir. 2001) ....................14, 15

*Ewing v. MED-1 Sols., LLC*,
24 F.4th 1146 (7th Cir. 2022) ....................16

*Fischl v. GMAC*,
708 F.2d 143 (5th Cir. 1983) ....................15

*Frazier v. Dovenmuehle Mortg., Inc.*,
72 F.4th 769, 776-77 (7th Cir. 2023) ....................10

*Gorman v. Wolpoff & Abramson, LLP*,
584 F.3d 1147 (9th Cir. 2009) .................... *passim*

*Hines v. Equifax Info. Servs., LLC*,
2024 WL 4132333 (E.D.N.Y. Sept. 10, 2024) ....................15

*Ingram v. Experian Info. Sols., Inc.*,
83 F.4th 231 (3d Cir. 2023) ....................11

*Jordan v. M&T Bank Corp.*,
772 F. Supp. 3d 921 (N.D. Ind. 2025) ....................17

*Lewert v. P.F. Chang's China Bistro, Inc.*,
819 F.3d 963 (7th Cir. 2016) ....................15

*Llewellyn v. Allstate Home Loans, Inc.*,
711 F.3d 1173 (10th Cir. 2013) ....................9

*Maiteki v. Marten Transp. Ltd.*,
828 F.3d 1272 (10th Cir. 2016) ....................10

*Murray v. GMAC Mortgage Corp*,
434 F.3d 948 (7th Cir. 2006) ....................16

*Nat'l Credit Union Admin. Bd. v. UBS Sec., LLC*,
2017 WL 411338 (D. Kan. Jan. 31, 2017)....................10

*Nelson v. Chase Manhattan Mortg. Corp.*,
282 F.3d 1057 (9th Cir. 2002) ....................11

*Norman v. Trans Union, LLC*,
669 F. Supp. 3d 351 (E.D. Pa. 2023) ....................15

*Remijas v. Neiman Marcus Group, LLC*,
794 F.3d 688 (7th Cir. 2015) ....................15

*Safeco Ins. Co. of Am. v. Burr*,
551 U.S. 47 (2010)....................18, 19

*Saunders v. Branch Banking and Tr. Co. of Virginia*,
526 F.3d 142 (4th Cir. 2008) .................... *passim*

*Seamans v. Temple Univ.*,
744 F.3d 853 (3d Cir. 2014)....................8, 9, 10, 20

*Shames-Yeakel v. Citizens Fin. Bank*,
677 F. Supp. 2d 994 (N.D. Ill. 2009) ....................7, 9, 13, 14

*Simonson v. IQ Data Int'l, Inc.*,
2023 WL 6810090 (W.D. Wis. Oct. 16, 2023)....................15

*Van Straaten v. Shell Oil Prod. Co. LLC*,
678 F.3d 486 (7th Cir. 2012) ....................20

*Westra v. Credit Control of Pinellas*,
409 F.3d 825 (7th Cir. 2005) ....................14

*Woods v. LVNV Funding, LLC*,
27 F.4th 544 (7th Cir. 2022) ....................13

**STATUTES & FEDERAL RULES**

Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x .................... *passim*

15 U.S.C. § 1681i(a)(3).................... 11

15 U.S.C. § 1681i(a)(3)(A) .................... 11

15 U.S.C. § 1681i(b)-(c) .................... 8

15 U.S.C. § 1681n.................... 15

15 U.S.C. § 1681n(a) .................... 18

15 U.S.C. § 1681s-2.................... 8

15 U.S.C. § 1681s-2(a) ....................7, 8, 9, 12

15 U.S.C. § 1681s-2(a)(1).................... 8

15 U.S.C. § 1681s-2(a)(2).................... 8

15 U.S.C. § 1681s-2(a)(3).................... 12

15 U.S.C. § 1681s-2(a)(8)(F) .................... 12

*15 U.S.C.* § 1681s–2(b).................... *passim*

FED. R. CIV. P. 56(a) .................... 7

**OTHER AUTHORITIES**

FEDERAL TRADE COMMISSION, *40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations* .................... 11

## I. INTRODUCTION

Plaintiff Lisa Wachowicz brings two claims under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x, against Defendant Dovenmuehle Mortgage, Inc., ("DMI") with respect to DMI's mishandling of her multiple disputes of its misleading credit reporting of her mortgage account that she submitted to Defendant through several consumer reporting agencies ("CRAs"). Count I alleges that DMI failed to conduct reasonable investigations into Plaintiff's disputes, and Count II alleges that DMI failed to report the "disputed" status of Plaintiff's mortgage account in its responses to the CRAs. ECF 1-1 at ¶¶ 64-66.

Every federal Circuit Court of Appeals to have addressed the issue has found that a furnisher's refusal to note the disputed status of a credit account in response to a dispute submitted through a CRA is a cognizable claim for violation of FCRA section 1681s-2(b) – the very claim Plaintiff asserts here, on behalf of herself and a class of similarly situated individuals. In its Motion for Summary Judgment ("Motion"), however, DMI claims that "*industry* guidance" from the Consumer Data Industry Association ("CDIA"), a trade and lobbying group for the CRAs, supposedly supplants these unambiguous judicial holdings. Under well-established Supreme Court precedent, the existence of this Circuit Court authority makes clear that DMI may be held liable for not only a negligent but also a willful violation of the FCRA, and certainly is not entitled to judgment as a matter of law on the issue of willfulness. DMI's Motion must be denied.

## II. FACTS

### A. <u>DMI Does Not Mark Disputed Accounts as Disputed in Its ACDV Responses Pursuant to Its Standardized and Intentionally Adopted Practices</u>

DMI's business practices center on what it calls "subservicing" residential mortgage loans on behalf of the loan's owner or investor. Def. Statement of Material Facts ("D. SoMF") at ¶¶ 1-2. As part of its practices, DMI reports information concerning these mortgage loans to several

CRAs,[1] and thus operates as a furnisher regulated by the FCRA. SoAF ¶ 2. When consumers make disputes through the CRAs regarding information DMI has furnished, these disputes are delivered to Defendant and addressed through the ACDV[2] process using the online "e-OSCAR" system. SoAF ¶ 3; *see also* Soumilas Decl. Ex. 2, Hendricks Report, at 3. Disputes communicated through this process have already gone through vetting by the CRAs before they ever reach DMI, including to exclude disputes deemed frivolous or irrelevant. SoAF ¶ 17; *see also* Soumilas Decl. Ex. 2, Hendricks Report, at 3-4).

When responding to consumer ACDV disputes, DMI has the opportunity to indicate that the consumer disputes the account information addressed in the ACDV by using one of a set of standardized "Compliance Condition Codes" ("CCCs"). SoAF ¶ 3. Each ACDV has a specific field for the inclusion of a CCC. SoAF ¶ 4. The most appropriate "disputed status" code for a furnisher to employ when providing an ACDV response to a CRA is the "XB" code. SoAF ¶ 5.

The availability and appropriate use of Compliance Condition Codes is also well known to DMI. SoAF at ¶¶ 8-11. DMI understands that "the Compliance Condition Code 'XB' . . . reflects that the borrower is disputing their credit," and that "once the XB [compliance condition] code is provided, . . . that particular mortgage account would be listed as disputed on [the borrower's] credit report[.]" SoAF ¶ 9.

Nevertheless, DMI instructs its employees in its internal policy documents that:

> The Compliance Condition Codes should *not be reported* in response to a consumer dispute investigation request received from the consumer reporting agencies,

---

[1] Also commonly called "credit bureaus," the most well-known CRAs are Equifax, Experian, TransUnion, and Innovis. DMI provides information about borrowers' mortgage accounts to all four of these CRAs. Plaintiff's Statement of Additional Material Facts ("SoAF") ¶ 2.

[2] ACDV stands for Automated Consumer Dispute Verification. Although ACDVs are typically processed electronically, they can be saved in a human-readable format for archival and other purposes. Plaintiff's ACDVs, which are representative of the form and appearance of such documents. *See* Soumilas Decl. Ex. 3, Pl.'s ACDVs.

> except where a data furnisher uses a Compliance Condition Code to satisfy its [federal Fair Debt Collection Practices Act] obligation to communicate that a debt is disputed.

SoAF ¶ 8. The noted exception involves those rare instances in which DMI receives an ACDV dispute notification concerning a consumer with no actual DMI account, such as a fraud victim, and is not relevant here. SoAF ¶ 11. Thus, apart from a single, narrow (and irrelevant) exception, DMI will not use any Compliance Condition Codes at all in its ACDV responses to the CRAs to mark disputed account as disputed. SoAF ¶ 12.

This practice stems from DMI's intentional choice to adopt, nearly verbatim, the practice recommended by the CDIA, an industry trade association that lobbies on behalf of the interests of CRAs. SoAF ¶¶ 6-7, 10. Indeed, DMI's policy is lifted almost word for word from the CDIA's Credit Reporting Resource Guide ("CRRG") or "Metro 2 Manual," to wit:

| DMI's Policy | CDIA's CRRG |
| --- | --- |
| The Compliance Condition Codes should not be reported in response to a consumer dispute investigation request <u>received</u> from the consumer reporting agencies, except where a data furnisher uses a Compliance Condition Code to satisfy its FDCPA obligation to communicate that a debt is disputed. | The Compliance Condition Codes should not be reported in response to a consumer dispute investigation request [ ] from the consumer reporting agencies, except where a data furnisher uses a Compliance Condition Code to satisfy its FDCPA obligation to communicate that a debt is disputed. |

*Cf* SoAF ¶ 8. Other than the CDIA's guidance and its own understanding of how e-OSCAR functions, DMI looks nowhere else for input on its compliance obligations with respect to this area of the FCRA. SoAF ¶ 10. Consistent with its general policy and practice, over 90% of the time, including in Plaintiff's case, DMI does not mark disputed mortgage accounts as being in dispute,

and did not use the XB code (or any code that would reflect the disputed status of an account) in its ACDV responses. SoAF ¶¶ 12-13.

The record indicates that CDIA's guidance is neither uniform nor uncontroversial. Defendant's expert had to concede during his deposition that the CDIA's business guidance on several points has had to be changed through the years based upon "pressure" from state attorneys general, regulators, and private litigation. SoAF ¶ 14. Moreover, both Plaintiff's expert and Defendant's expert agree that the CDIA guidance regarding disputed accounts is not followed by many other furnishers. SoAF ¶ 15. Contrary to DMI's practice and claims, there are multiple examples of credit furnishers using the CCC field of the ACDVs to mark disputed credit accounts as disputed. Pl. Resp. to D. SoMF ("RSoMF") at ¶ 56; SoAF ¶ 16. CDIA guidance is nonbinding, lacks the force of law or regulation, and was invented to serve the interests of CRAs, by representatives of the CRAs themselves. SoAF ¶ 7.

B. DMI Did Not Mark Plaintiff's Account as Disputed in Response to Her Multiple ACDV Disputes

In 2019, Plaintiff took out a mortgage loan to purchase a home, and shortly thereafter, DMI became the servicer for Plaintiff's loan, informing her of the balance of her loan and taking her monthly payments. D. SoMF ¶ 5. Since that time, Plaintiff had been timely paying her mortgage via automated ACH withdrawals from a checking account at Chase bank, a process she authorized through DMI's website. SoAF ¶ 21. From 2019 to 2022, Plaintiff's monthly mortgage payments were withdrawn from her Chase account without incident and within the required period. *Id.*

In early 2022, Ms. Wachowicz opened new accounts with the Credit Union of Colorado ("CUC") and authorized and instructed DMI to withdraw her monthly mortgage payment from her CUC account and ended her authorization for DMI to withdraw funds from Chase. SoAF ¶ 22. Separately, a one-time ACH draft for the March 1 payment from Plaintiff's CUC account was also

set up on February 27, 2022. SoAF ¶ 23. On March 1, 2022, DMI attempted to withdraw Ms. Wachowicz's March 2022 mortgage payment from her old Chase account, which transaction failed for lack of sufficient funds. D. SoMF ¶ 9. DMI simultaneously—and successfully—withdrew the March 2022 mortgage payment in full from Ms. Wachowicz's new CUC account pursuant to the one-time draft authorization. SoAF ¶ 24.

DMI asserts that it attempted to send her a "refund" check for the March 1 payment. D. SoMF ¶¶ 16-18. But the undisputed evidence shows that Plaintiff never received this check, and of course never cashed it. SoAF ¶¶ 26. Although the funds for Plaintiff's March 2022 mortgage payment remained with DMI at all times after March 1, 2022, they were *not* applied toward Plaintiff's mortgage until DMI conducted an internal investigation after this lawsuit was filed. SoAF ¶¶ 26-29. Nearly two years later, long after the initiation of this lawsuit, DMI finally tracked the funds associated with the never-negotiated check from March 4, 2022 down to an escheatment account. SoAF ¶ 29. Nevertheless, DMI reported to the national CRAs that Plaintiff had been late and/or had missed her March 2022 mortgage payment. D. SoMF at ¶ 20.

### C. DMI's Failure to Correct Its Reporting and Mark The Account as "Disputed" Harmed Plaintiff

Plaintiff understands that having a good credit history is important and has a practice of checking her credit reports. SoAF ¶ 30. So, when she discovered that DMI was reporting inaccurate, negative information about her mortgage payment history to a CRA, a factual assertion with which she strongly disagreed given the successful debit from her CUC account and her desire to pay her mortgage on time in March 2022, Plaintiff disputed DMI's erroneous and misleading credit reporting about her mortgage payment history beginning in April 2022 through the national CRAs. SoAF ¶ 31. DMI received and responded to four (4) ACDV forms concerning Plaintiff's disputes on different occasions throughout 2022 via the e-OSCAR system. SoAF ¶ 32.

In her deposition, Plaintiff described these efforts as "time-consuming and frustrating," SoAF ¶ 31, and noted that DMI did not correct the disputed information or instruct the CRAs to mark her account as disputed, which is confirmed by DMI's records. SoAF ¶ 31. Plaintiff recalls that DMI's reporting also caused her credit score to drop, and caused her to suffer lost credit opportunities, lost time and effort wasted disputing, and frustration. SoAF ¶ 30.

Despite these multiple opportunities to identify its reporting error and correct it, DMI "verified" the "accuracy" of its previous "late-payment" reporting each time and never once indicated in its ACDV responses to the CRAs that Plaintiff had disputed its credit reporting by including the "XB" code *or any other dispute code* in the Compliance Condition Code field. SoAF ¶ 32. This was the direct result of DMI's policy and procedures concerning ACDV disputes received through the e-OSCAR system. SoAF ¶¶ 8-12. Therefore, despite at least four (4) ACDV disputes and this lawsuit, DMI continued for years to report Plaintiff's mortgage account to CRAs with a late payment history and with no mention of any disputed status, as if the history of Plaintiff's repeated protests and ACDV disputes never happened at all. SoAF ¶ 32.

Plaintiff's experience is consistent with the opinions expressed by Plaintiff's well-recognized expert Evan Hendricks, who has decades of experience with the consumer reporting industry. Disputing inaccurate credit information expends time (between 55 and 100 minutes), energy, and resources, and not marking debts as disputed has a negative impact on consumers' credit scores. SoAF ¶ 34. Mr. Hendricks expects that these injuries would befall anyone whose disputes are not corrected or marked as disputed. SoAF ¶ 35.

## III. LEGAL STANDARD

Summary judgment is improper unless the "movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV.

P. 56(a). "In determining whether a genuine issue of material fact exists, the court construes 'all facts and reasonable inferences in the light most favorable to the non-moving party.'" *Shames-Yeakel v. Citizens Fin. Bank*, 677 F. Supp. 2d 994, 1001 (N.D. Ill. 2009) (quoting *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005)).

## IV. ARGUMENT

Because DMI is not entitled to summary judgment as to either of Plaintiff's claims under FCRA section 1681s-2(b), its Motion should be denied.

### A. DMI Fails to Meet Its Burden to Demonstrate That Its ACDV Responses Were Complete and Accurate in Light of Binding Circuit Court Precedent Requiring Furnishers to Acknowledge the Disputed Status of Accounts in the Context of ACDV Disputes

DMI's argument that it allegedly has no "enforceable obligation" (Mot. at 1) to note the disputed character of Plaintiff's account in response to an ACDV notice of dispute because it follows "industry guidance" is simply incorrect. Every federal circuit court to have examined the duty of a furnisher like DMI under FCRA section 1681s-2(b) to mark disputed accounts as disputed in response to ACDV disputes supports Plaintiff's claim here, and no circuit authority favors DMI.

#### 1. *DMI Ignores More Than a Decade of Binding Circuit Court Authority Concerning Its FCRA Section 1681s-2(b) Obligation to Report Disputed Accounts as Disputed.*

In its Motion, DMI tries to duck the decisions of several federal circuit courts that have unequivocally recognized the interplay between FCRA sections 1681s-2(a) and s-2(b) that underlies Plaintiff's claim here. DMI would have this Court adopt the very rule that multiple Circuit Courts have already rejected, namely that, "as a matter of law, an omission of the disputed nature of a debt never renders a report incomplete or inaccurate." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009). Rather, these courts have held holding instead that: "Not only might such a rule intimidate consumers into giving up bona fide disputes by paying debts not

actually due to avoid damage to their credit ratings, but it also contravenes the purpose of the FCRA, to protect against 'unfair credit reporting methods.'" *Id.* (quoting 15 U.S.C. § 1681(a)(1)).[3]

FCRA section 1681s-2(a) places several requirements upon furnishers concerning their provision of information to CRAs, including prohibiting furnishers from knowingly providing inaccurate information, 15 U.S.C. § 1681s-2(a)(1), and requiring them to correct and update information previously provided so that it is "complete and accurate." 15 U.S.C. § 1681s-2(a)(2). Notably, the plain language of FCRA section 1681s-2 provides that:

> [I]f the completeness or accuracy of any information furnished by any person to any [CRA] is disputed to such person by a consumer, the person *may not* furnish the information to any [CRA] *without notice that such information is disputed by the consumer*.

*Id*. at § 1681s-2(a)(3) (emphasis added).

Although there is no private right of action to enforce a furnisher's obligations under FCRA section 1681s-(2)(a), circuit courts have consistently held that "a furnisher's continuing failure to flag an account as disputed *also constitutes a violation of 15 U.S.C. § 1681s–2(b),* which . . . requires complete and accurate post-dispute reporting of debts, and *is* privately enforceable[.]" *Seamans v. Temple Univ.*, 744 F.3d 853, 866–67 (3d Cir. 2014) (emphasis added); *Gorman*, 584 F.3d at 1164; *Saunders v. Branch Banking and Tr. Co. of Virginia*, 526 F.3d 142, 150 (4th Cir. 2008); *see also Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1185–86 (10th Cir. 2013)

---

[3] Initially, DMI focuses its argument on CRAs' duty under FCRA section 1681i(b)-(c) to "'clearly note' that the credit reporting on the account 'is disputed by the consumer,'" including by allowing the consumer to "provide a brief explanation as to why the consumer believes the reporting is still inaccurate" after a dispute. Mot. at 8. However, this requirement is entirely independent of DMI's duty to mark disputed accounts as disputed, and the existence of separate obligations on the part of the CRAs does not relieve DMI of its own duties as a data furnisher. After all, the FCRA is a comprehensive statutory regime that imposes requirements upon a variety of different actors from CRAs, to furnishers, to users of consumer reports. Nothing about CRAs' separate duties abrogates DMI's duty to mark disputed accounts as disputed.

(following *Saunders* and finding that a credit furnisher's reporting must not only be accurate, but also complete).

In *Saunders*, the Fourth Circuit Court of Appeals described the interplay between these sections as follows:

> The first subsection, § 1681s–2(a), provides that furnishers have a general duty to provide accurate and complete information; the next subsection, § 1681s–2(b), imposes an obligation to review the previously disclosed information and report whether it was "incomplete or inaccurate" upon receipt of a notice of dispute from a CRA. The second subsection thus requires furnishers to review their prior report for accuracy and completeness; it does not set forth specific requirements as to what information must be reported, because these requirements have already been set forth in the first subsection.

526 F.3d at 149. As the Third Circuit has also explained in the exact same factual context, "the fact that a furnisher is affirmatively obligated to flag an account as disputed under § 1681s–2(a) does not undermine the conclusion that a failure to flag the account as disputed also constitutes a material inaccuracy under § 1681s-2(b)." *Seamans*, 744 F.3d at 867. In other words, the duty imposed by FCRA section 1681s-2(a) does not evaporate when a credit furnisher like DMI is notified of a dispute of its original credit reporting through the ACDV process and must investigate under FCRA section 1681s-2(b). *Shames-Yeakel*, 677 F. Supp. 2d at 1005 ("If a furnisher has a duty to report information under the subsection (a) standard, that information must also be covered by the subsection (b) duty to investigate and correct 'incomplete or inaccurate' information.") (citing *Saunders*, 526 F.3d at 149–50).

And although the Seventh Circuit has not ruled on this exact issue, it has emphasized the importance of noting the disputing consumer's side of the story in response to a dispute of mortgage information and the potential for similar omissions to be misleading and therefore inaccurate and incomplete. *Chaitoff v. Experian Info. Sol's, Inc.*, 79 F.4th 800, 817-18 (7th Cir.

2023).[4] And the Seventh Circuit *has* held, in case against DMI itself, that "completeness or accuracy is evaluated objectively based on the content of the furnisher's ACDV response" in the FCRA section s-2(b) context. *Frazier v. Dovenmuehle Mortg., Inc.*, 72 F.4th 769, 776-77 (7th Cir. 2023).[5] In combination, *Chaitoff* and *Frazier* strongly indicate that the Seventh Circuit would join the *Saunders*, *Gorman*, and *Seamans* Courts and hold that the *omission* of an appropriate indicator of the disputed nature of credit accounts in ACDV responses renders those responses incomplete and thus inaccurate. *See Chaitoff*, 79 F.4th at 817-18.

2. *DMI's Attempt to Shelter Behind Non-Binding Industry Guidance Is Unavailing*

"[C]ompliance with industry standards does not necessarily establish compliance with the reasonable care standard, as the entire industry may have been acting unreasonably." *Nat'l Credit Union Admin. Bd. v. UBS Sec., LLC*, No. 12-2591-JWL, 2017 WL 411338, at *6 (D. Kan. Jan. 31, 2017). Nevertheless, DMI asks this Court to substitute the preferences of consumer reporting industry insiders for the judgment of Congress and federal Courts of Appeal.

In its only acknowledgement of the leading circuit court decisions validating Plaintiff's theory of FCRA section 1681s-2(b) liability here, DMI argues that Plaintiff's disputes were not "meritorious," because she "did not successfully make her March 2022 mortgage payment nor her October 2022 payment." Mot. at 10-11. DMI's argument here fails not only because these facts are disputed, *see* SoAF ¶ 16-20,[6] but also because it misapprehends the nature of a meritorious or bona fide dispute.

---

[4] DMI makes no effort to address *Chaitoff* in its Motion.

[5] *Citing Woods v. LVNV Funding, LLC*, 27 F.4th 544, 550 (7th Cir. 2022); *Maiteki v. Marten Transp. Ltd.*, 828 F.3d 1272, 1275 (10th Cir. 2016); *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 29-30 (1st Cir. 2010).

[6] Whether Plaintiff "missed" her October 2022 mortgage payment is disputed. It is plain from the face of Plaintiff's bank statement that a $2,332.60 payment to DMI was made from Plaintiff's Credit Union

Although furnishers may not always agree with the contentions set out in consumers' ACDV disputes, they have no reason to discount the legitimacy or provenance of the disputes themselves because CRAs independently weed out frivolous or irrelevant disputes before sending notice of a consumer's dispute to a furnisher. SoAF ¶ 17. CRAs' authority to act as a gatekeeper with respect to consumers disputes arises from FCRA section 1681i(a)(3)(A), which provides that CRAs may "terminate a reinvestigation of information disputed by a consumer . . . if the agency reasonably determines that the dispute by the consumer is frivolous or irrelevant." 15 U.S.C. § 1681i(a)(3)(A). However, if a CRA determines that a consumer's dispute is frivolous or irrelevant, it must notify both the disputing consumer and the furnisher that provided the disputed information of that determination. 15 U.S.C. § 1681i(a)(3).

Recognizing this authority, several Circuit Courts of Appeal have concluded that the FCRA does not provide furnishers with the discretion to "decide [an indirect dispute received from a CRA] is frivolous or irrelevant and decline to perform an investigation of its own." *Ingram v. Experian Info. Sols., Inc.*, 83 F.4th 231, 241 (3d Cir. 2023); *Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1060 (9th Cir. 2002) (noting that this CRA "filtering mechanism" protects furnishers). Similarly, according to the Federal Trade Commission, which shares FCRA enforcement responsibilities with the Consumer Financial Protection Bureau, a "CRA must assume a consumer's dispute is bona fide, unless there is evidence to the contrary." FEDERAL TRADE COMMISSION, *40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations*, § 611(a) item 6, 77 (July 2011) *available at*

of Colorado account on October 17, 2022. *See* D. SoMF ¶ 21-22. The existence of this payment only a few days later could support a reasonable jury's finding that the payment was not "missing" at all.

https://www.ftc.gov/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations.

In contrast, when furnishers receive a credit reporting dispute *directly* from a consumer, they may decline to reinvestigate if they find the dispute to be frivolous or irrelevant. *See* 15 U.S.C. § 1681s-2(a)(8)(F). Accordingly, DMI has a policy for vetting disputes received directly from consumers, and if it determines that the consumer's dispute is frivolous or irrelevant, it will send the disputing consumer a notice of that determination in a "QC042 letter." SoAF ¶ 19. On the other hand, because ACDV disputes received via e-OSCAR are presumptively bona fide, no analogous policy exists and DMI responds to each such dispute on its own merits according to a uniform policy and process. SoAF ¶ 18. Here, DMI did not independently find Plaintiff's disputes to be frivolous under its separate policy or send her a QC042 letter and processed Plaintiff's several ACDV disputes in the normal course. SoAF ¶ 20.

Defendant also incorrectly contends that because the CDIA changed its *guidance* in 2017, without any basis or explanation, that the duty to mark disputed accounts as disputed allegedly applies only in cases of "direct" disputes. But the FCRA *statutory duty* to mark account as disputed says nothing about "direct" or "indirect." 15 U.S.C. § 1681s-2(a)(3). That is because Congress imposed no such restriction. When Congress did wish to limit certain other obligations to "direct" furnisher disputes, it used that term expressly. *See id*. § 1681s-2(a)(8).

And at any rate, Defendant focuses on the wrong statutory term altogether. Because Plaintiff brings an FCRA section 1681s-2(b) claim here, the key term, as every Circuit Court points out, is "completeness." When a furnisher such as Defendant fails to change its reporting following an ACDV dispute and also fails to mark that account as "disputed," it is furnishing *incomplete* and therefore inaccurate investigation results. What constitutes complete and accurate reporting by

furnishers in the first instance is set forth in FCRA section 1681s-2(a), and therefore those provisions inform what constitute complete and accurate *investigation results* in the case of an ACDV dispute through the CRAs. *Saunders*, 526 F.3d at 149. Those investigation results were (minimally) *incomplete* here due to Defendant's misguided practice.

In sum, Defendant has entirely failed to show that its practices, which flout established Circuit Court authority regarding its obligations to mark accounts as disputed in response to ACDV disputes, warrant summary judgment in its favor. The Motion must be denied.

B. Disputed Issues of Material Fact Preclude Summary Judgment as to Whether DMI's Reinvestigations of Plaintiff's Disputes Were Reasonable as a Matter of Law

"Whether an investigation is 'reasonable' is a factual question normally reserved for trial unless the procedures were reasonable beyond question." *Woods v. LVNV Funding, LLC*, 27 F.4th 544, 550 (7th Cir. 2022). Several disputed issues of fact make it clear that DMI's procedures fail to meet this exact standard, making reasonableness a question for the jury, as is generally the case. *See Shames-Yeakel*, 677 F. Supp. 2d at 1004 (citing *Hinton v. USA Funds,* No. 03 C 2311, 2005 WL 730963, at *5 (N.D. Ill. Mar. 30, 2005) (collecting cases)).

Initially, whether Plaintiff made her March 2022 mortgage payment is disputed. DMI carefully asserts that "no payment was *credited* to [Plaintiff's] account in March 2022," Mot. at 11 (emphasis added), but the evidence of record makes it clear that DMI *received* Plaintiff's March 1, 2022 mortgage payment via a one-time ACH draft from her checking account at the Credit Union of Colorado. SoAF ¶ 24. DMI asserts that Plaintiff asked it to send her a refund of her March 1 payment by check, but Plaintiff disputes this. SoAF ¶ 25. A reasonable jury could credit Plaintiff's version of events because the only evidence of record is that Plaintiff never received nor negotiated check DMI supposedly sent, which on its face became void after 90 days. SoAF ¶¶ 26-27. Those funds never left DMI's possession, and it "found" them years later and only then

applied them to Plaintiff's mortgage account, something it surely could have done earlier when put on notice of the problem via Plaintiff's ACDV disputes. SoAF ¶¶ 28-29. These facts support a finding by a reasonable jury that a more rigorous factual investigation could have revealed information in DMI's possession that would have changed the outcome of Plaintiff's disputes, defeating its bid for summary judgment on this issue. *See Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005) (presence of additional facts relevant to whether reinvestigation is reasonable as a matter of law).

These facts also demonstrate that, at a bare minimum, DMI should have marked Plaintiff's account as disputed in response to her ADCV disputes, something it did not do in keeping with its blanket policy. Thus, in this matter, as in others like it, "[t]he genuine FCRA issue lies not in the reasonableness of [DMI's] factual investigation but rather in the reasonableness of its ultimate decision to report Plaintiff['s mortgage] account as delinquent without acknowledging the disputed nature of [her] debt." *Shames-Yeakel*, 677 F. Supp. 2d at 1006. Because DMI did not acknowledge the disputed nature of Plaintiff's account, "a reasonable finder of fact could conclude that failure to report such important details was 'misleading in such a way and to such an extent that it [could have been] expected to have an adverse effect' on Plaintiff." *Id.* at 1005 (quoting *Dalton v. Capital Assoc.*, 257 F.3d 409, 415 (4th Cir. 2001) (internal quotation omitted)). This, too, precludes summary judgment.

C. Disputed Issues of Fact Regarding Plaintiff's Injuries Preclude Summary Judgment

DMI is not entitled to summary judgment on the issue of damages. In its Motion, DMI restricts discussion of Plaintiff's damages to lost credit opportunities, but this framing of injury is not only too narrow, it is contradicted by record evidence that DMI's conduct caused Plaintiff

reputational injury, emotional distress, and wasted time and resources,[7] all of which are recognized under the FCRA.[8] Having ignored these types of injuries in its opening brief, DMI forfeits the issue for the purpose of its Motion, and summary judgment must be denied. *Adams v. Bd. of Educ. of Harvey Sch. Dist. 152*, 968 F.3d 713, 716 (7th Cir. 2020).

DMI ignores substantial evidence of Plaintiff's lost time and resources, which were wasted by DMI because it will never include the disputed status of mortgage in ACDV responses pursuant to its unlawful policy. It is well established that even a small amount of lost time can be a compensable harm. *See Craftwood II, Inc. v. Generac Power Sys., Inc.*, 920 F.3d 479, 481 (7th Cir. 2019) (time lost reading a junk fax before discarding it is a concrete injury); *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963 (7th Cir. 2016) (victims of a data breach could recover for time spent resolving fraudulent charges and attempting to protect against future identity theft and fraudulent charges); *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688, 694 (7th Cir. 2015) (same); *see also Simonson v. IQ Data Int'l, Inc.*, No. 22-CV-215-JDP, 2023 WL 6810090, at *5 (W.D. Wis. Oct. 16, 2023) (summary judgment denied where Plaintiff provided evidence that she lost time trying to remove an adverse account from her credit report and prevent the

---

[7] As noted above, Plaintiff brings two claims under FCRA section 1681s-2(b). The first is in her individual capacity for DMI's failure to correct its inaccurate reporting of her mortgage account upon dispute, and with respect to this claim, Plaintiff will seek individual, actual damages. It is in this vein that Plaintiff responds to DMI's arguments in favor of summary judgment here.

Plaintiff separately filed a motion for class certification with respect to her class claim for DMI's failure to mark her account and those of class members as disputed in response to their ACDV disputes. *See* ECF 71. With respect to that claim, Plaintiff seeks statutory damages in an amount between $100 and $1,000 pursuant to FCRA section 1681n for herself and each member of the class, and she sets forth the bases for such an award in her memorandum of law in support of class certification. As the Seventh Circuit has held, such an election of remedies is entirely appropriate. *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952-53 (7th Cir. 2006).

[8] *See Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001) (recognizing "loss of credit" as cognizable actual damage under the FCRA); *Dalton v. Capital Assoc.*, 257 F.3d 409 (4th Cir. 2001) (reputational harm); *Fischl v. GMAC*, 708 F.2d 143 (5th Cir. 1983) (reputational harm); *Cortez v. TransUnion Corp.*, 617 F.3d 688 (3d Cir. 2010) (recognizing emotional and psychological harm, time spent trying to resolve the problem).

account from harming her in the future).[9] And, even if Plaintiff's damages may be difficult to quantify, that does not render them illusory such that DMI is entitled to summary judgment on this issue. *Murray v. GMAC Mortgage Corp*, 434 F.3d 948, 953 (7th Cir. 2006) ("That actual loss is small and hard to quantify is why statutes such as the Fair Credit Reporting Act provide for modest damages without proof of injury.").

Second, DMI ignores evidence of Plaintiff's emotional distress. *Ewing v. MED-1 Sols., LLC*, 24 F.4th 1146, 1152 (7th Cir. 2022) ("[B]eing portrayed as a deadbeat who does not pay her debts has real-world consequences."). In addition to frustration that her repeated disputes were being ignored and anxiety over ever having her payment history corrected, Plaintiff testified that she suffered emotional distress as a result of the late fees that DMI added to her account after March 1, 2022. SoAF ¶ 33.

In any event, DMI is incorrect about the consequences of its failure to note Plaintiff's ongoing dispute in its ACDV responses. Where a furnisher fails to mark a disputed account as disputed, "the omission of the disputed nature of a debt could render the information sufficiently misleading so as to be 'incomplete or inaccurate' within the meaning of [§ 1681s–2(b)]." *Gorman*, 584 F.3d at 1163 (quoting *Saunders*, 526 F.3d at 150). This is no idle omission, as a "disputed" indication has practical effects on a consumer's credit reputation and protects consumers from intimidation. As Plaintiff's expert opines, the inclusion of an XB Compliance Condition Code, the most appropriate one for a dispute like Plaintiff's, prevents a diminution of the disputing consumer's credit score. SoAF ¶¶ 2, 27; *see also Saunders*, 526 F.3d at 150 ("For instance, when

---

[9] *See also Norman v. Trans Union, LLC*, 669 F. Supp. 3d 351, 371-73 (E.D. Pa. 2023) (wasted time and resources disputing credit information confers Article III standing); *Hines v. Equifax Info. Servs., LLC*, No. 19-CV-6701 (RPK) (RER), 2022 WL 2841909, at *8 (E.D.N.Y. July 16, 2022) (in FCRA credit reporting case involving disputes, "wasted time and expense is a traditional monetary harm that is fairly traceable to [defendant's conduct] and is redressable by judicial relief), *report and recommendation adopted as modified* 2024 WL 4132333 (E.D.N.Y. Sept. 10, 2024).

a furnisher responds to a dispute verification form and relates an ongoing dispute, [the CRA] records the dispute in the credit report and does not include the derogatory information in assessing the credit score.”).[10]

DMI’s reliance on *Jordan v. M&T Bank Corp*., 772 F. Supp. 3d 921 (N.D. Ind. 2025) (*appeal pending*, No. 25-1483 (7th Cir.)) is misplaced. The *Jordan* court, faced with an entirely different factual record than presented here, found insufficient evidence to create a material issue of fact as to whether the disputing consumer owed the debt at issue. *Id.* at 940. But here, the material facts surrounding the timeliness of Plaintiff’s March 2022 mortgage payment are disputed, and a reasonable jury could easily credit Plaintiff’s evidence that DMI alone is responsible for its failure to properly credit her account. *See* SoAF at ¶¶ 23-25. In particular, the fact that DMI later found Plaintiff’s March 2022 payment in its own accounts corroborates Plaintiff’s version of events. SoAF at ¶¶ 26-29.

Because at summary judgment, “[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor,” *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), whether Plaintiff’s several disputes were colorable, if not altogether meritorious, should be reserved for the jury. If so, as Plaintiff contends, whether DMI’s decision to decline to mark Plaintiff’s account as “disputed” in response to her several disputes violates FCRA section 1681s-2(b) should also be submitted to the jury. Thus, unlike a situation in which a consumer’s underlying liability for a debt is at issue, DMI’s omission of a disputed status in relationship to Plaintiff’s disputes “could materially alter how the reported debt is understood, [which] gives rise to a furnisher’s liability under § 1681s-2(b).” *Gorman*, 584 F.3d at 1163.

---

[10] At least one court has concluded that a disputed debt differs materially from an undisputed debt even if the consumer would not succeed at a trial of the dispute. *See, e.g., Alexander v. Moore & Assocs., Inc.*, 553 F. Supp. 948, 954 (D. Haw. 1982) (arguing that consumer’s dispute of default on debt, even if predicated upon an invalid legal defense, is relevant if the underlying default is relevant).

As there is no serious dispute as to whether Plaintiff suffered damages as a result of DMI's failure to correct its credit reporting in response to Plaintiff's multiple disputes and to mark Plaintiff's account as "disputed," summary judgment must be denied.

D. DMI Cannot Claim Safe Harbor Under *Safeco*, and a Reasonable Jury Could Find that It Recklessly Disregard Its FCRA Duties

Finally, DMI argues that its conduct cannot be willful because it "complied with unambiguous industry guidance" and "was consistent with industry standards," but this argument fails under the longstanding standard for willfulness set forth in. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2010). There, the Supreme Court held that Congress intended the term "willfully" in FCRA section 1681n(a) to have its "common law usage," which requires "reading the phrase 'willfully fails to comply' in § 1681n(a) as reaching reckless FCRA violations." 551 U.S. at 57. It further explained that "where willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well." *Id*. Thus, FCRA section 1681n(a) "giv[es] a plaintiff a choice of mental states to show in making a case for liability[.]" *Id*. at 60. Because "'willfully' covers both knowing and reckless disregard of the law, knowing violations are sensibly understood as a more serious subcategory of willful ones." *Id*. at 59.

*Safeco* also held that a defendant does not "act in reckless disregard of [the FCRA] unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id*. at 69. In assessing this risk, courts must consider whether a defendant's reading of the statutory text that resulted in the violation was "objectively unreasonable." *Id*. at 70.

When approaching the willfulness inquiry, a court first considers whether the Act provides "clear guidance" as to the meaning of particular statutory language or instead contains "less-than-pellucid statutory text." *Safeco*, 551 U.S. at 70. Second, a court considers whether the defendant's proposed interpretation "had a 'foundation in the statutory text.'" *Id*. at 69-70. Third, a court asks whether the defendant was "interpreting the statute in the absence of any contrary authority on the meaning" of the statutory language in question "because 'no court of appeals had spoken on the issue, and no authoritative guidance has yet come from the FTC.'" *Id*. at 70.

Where, as here, (1) the statute is clear and allows for no ambiguity, (2) circuit authority is on point, and (3) applicable regulatory guidance instructs furnishers to treat ACDV disputes as bona fide, DMI's reading of the FCRA provision at issue is objectively unreasonable, and so it cannot obtain a summary judgment. A jury should determine at trial whether it recklessly disregarded the FCRA, a highly fact-specific inquiry.

DMI does not argue that this is a situation in which its FCRA duties are unclear or unsettled, or that the applicable statutory language is unclear. Therefore, it cannot assert a "objectively reasonable interpretation" defense to Plaintiff's claims under *Safeco*. Indeed, as discussed above, every circuit court of appeals to have addressed a furnisher's duty to mark disputed accounts as disputed has agreed with Plaintiff. As such, DMI plainly "had the benefit of guidance from the courts of appeals . . . that might have warned it away from the view it took." *Safeco*, 551 U.S. at 70. Here, DMI places all of its eggs in the basket of the CDIA's "industry guidance," but this sort of interpretive guidance is *not* the sort that the Supreme Court found in *Safeco* to be relevant to the willfulness inquiry. *Id*. DMI's reliance on "industry" guidance is therefore unavailing.

Moreover, the authors of that guidance are themselves the mouthpieces of the credit reporting industry, who advocate on behalf of the interests of CRAs who of course prefer to comply

with fewer statutory obligations. SoAF ¶ 7. It should come as no surprise that the nation's largest CRAs are not keen on consumers' disputes of the completeness and accuracy of the information in their files. Coordinated noncompliance, directed by the industry itself, does not equate to a free pass for data furnisher like DMI to ignore their statutory requirement to mark disputed accounts as disputed. *See Van Straaten v. Shell Oil Prod. Co. LLC*, 678 F.3d 486, 489 (7th Cir. 2012) ("'Everyone knows' is no substitute for support in the text.")).

Moreover, there is detailed evidence of record here that not all data furnishers are in thrall to the CDIA's "guidance," and the fact that four separate Circuit Courts have found that furnishers are exposed to FCRA section 1681s-2(b) liability for their failure to mark disputed accounts as disputed in ACDV responses has not gone totally unnoticed by the data furnishing industry. In the experience of Plaintiff's expert, several furnishers of information use CCCs to note the disputed status of accounts when responding to ACDV disputes. SoAF ¶ 29. Even DMI's expert John Ulzheimer admitted familiarity with businesses that furnish credit information acting inconsistently with the CDIA's guidance with respect to using CCCs. SoAF ¶ 30. That DMI nevertheless stridently sticks to its guns is further proof of its recklessness. "Blanket policies, too, can underpin such a finding" of willfulness under the FCRA. *Seamans*, 744 F.3d at 868.

## V. CONCLUSION

For the reasons set forth above, Plaintiff Lisa Wachowicz respectfully requests that this Court deny Defendant's Motion for Summary Judgment in full.

Dated: January 26, 2026

Respectfully,

LISA WACHOWICZ,
by her attorneys,

*/s/John Soumilas*
James A. Francis (admitted *pro hac vice*)
John Soumilas (admitted *pro hac vice*)
Lauren KW Brennan (admitted *pro hac vice*)
FRANCIS MAILMAN SOUMILAS, P.C.
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: 215.735.8600
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
lbrennan@consumerlawfirm.com

Jordan M. Sartell (ARDC No. 6310097)
FRANCIS MAILMAN SOUMILAS, P.C.
310 South County Farm Road, Suite H
Wheaton, IL 60187
T: 215.735.8600
jsartell@consumerlawfirm.com

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true and correct copy of the above and foregoing Plaintiff's Motion for Class Certification and Memorandum in Support was filed on January 26, 2026 via the CM/ECF filer for the United States District Court for the Northern District of Illinois, Eastern Division, which will then send a notification of electronic filing to all counsel of record.

*/s/John Soumilas*
John Soumilas